BOARD OF EDUCATION OF THE TOWNSHIP OF EGG HARBOR, APPELLANT, v. BOARD OF EDUCATION OF GREATER EGG HARBOR REGIONAL HIGH SCHOOL DISTRICT AND STATE OF NEW JERSEY, DEPARTMENT OF EDUCATION, RESPONDENTS.

Superior Court of New Jersey
Appellate Division

Argued September 29, 1982—Decided October 18, 1982.

Before Judges MATTHEWS, ANTELL and FRANCIS.

*William C. Todd, III,* argued the cause for appellant (*Tort, Jacobs, Gross & Todd,* attorneys; *A. Ralph Perone* of counsel).

*Louis J. Greco* argued the cause for respondent Board of Education of Greater Egg Harbor, etc. (*Donio & Greco,* attorneys).

*Jaynee LaVecchia,* Deputy Attorney General, argued the cause for respondent Department of Education (*Irwin I. Kimmelman,* Attorney General, attorney; *James J. Ciancia,* Assistant Attorney General, of counsel).

PER CURIAM.

The Board of Education of the Township of Egg Harbor (Egg Harbor) appeals from a final decision of the State Board of Education involving the division of assets and liabilities of the Greater Egg Harbor Regional High School District upon Egg Harbor's withdrawal from that district.

Prior to June 30, 1979 the Greater Egg Harbor Regional High School District (Regional District), which is a limited purpose regional school district, was comprised of five member local districts. The Regional District owned one building located in Hamilton Township. On October 25, 1976, pursuant to *N.J.S.A.* 18A:13-51, Egg Harbor resolved to apply to the Atlantic County Superintendent (Superintendent) [to request him] to investigate the advisability of Egg Harbor's withdrawal from the Regional District. Such an application is the first step in the process of withdrawal set forth in *N.J.S.A.* 18A:13-51 to 18A:13-65.

The Superintendent, pursuant to *N.J.S.A.* 18A:13-52, issued his report on March 16, 1977:

> *Report of county superintendent.* The county superintendent shall, within 60 days after such request, file with the governing bodies of the municipalities constituting the regional district and the boards of education of all of the constituent school districts and the board of education of the regional school district a report containing a statement of the current assets and operating expenses of the regional district for the then current year and such financial, educational and other information as he may deem necessary to enable said governing bodies and local boards of education and regional board of education to form an intelligent judgment as to the advisability of the proposed withdraw-

al and the effect thereof upon the educational and financial condition of the withdrawing district and the regional district and setting forth the amount of indebtedness, if any, to be assumed by the withdrawing and the regional districts, calculated as hereinafter provided.

Item X of the Superintendent's report set forth the "Amount of Indebtedness to be Assumed." It listed each constituent district's share of the Regional District's "debt service" for 1976–1977 and then listed the share of the 1976–1977 "debt service" that each district would have been required to pay, if Egg Harbor had not been a member of the Regional District during that school year.

Item XI of the Superintendent's Report was entitled "Assets and Liabilities." Here the Superintendent noticed that if Egg Harbor's withdrawal was approved, *N.J.S.A.* 18A:13–62 would require him to make a report and to divide the Regional District's assets and liabilities in the following manner, as provided in *N.J.S.A.* 18A:8–24:

The county superintendent in a written report filed by him at the end of the school year preceding that in which the new district is created shall make a division of the assets, except school buildings, grounds, furnishings and equipment, and of the liabilities, other than the bonded indebtedness of the original district, between the new district and the remaining district on the basis of the amount of the ratables in the respective districts on which the last school tax was levied, and in determining the amount of assets to be divided, he shall take into account the present value of the school books, supplies, fuel, motor vehicles and all personal property other than furnishings and equipment. In the case of any vehicle used for the transportation of school children, the original cost of the vehicle, less any state aid appropriated therefor, shall be deemed to be the present value.

The Superintendent noted that based on 1976–1977 statistics Egg Harbor would be entitled to 31.65% of the assets and responsible for 31.65% of the liabilities. He concluded:

It would be appropriate for the division of assets and liabilities to be made based upon the following:

1. The remaining Districts would assume the remaining debt service and liabilities of the District.

2. The remaining Districts would assume the building, grounds, and assets of the District.

3. The withdrawing District would relinquish any claim to any assets of the District, including buildings and grounds.

4. The withdrawing District would not be responsible for any debt service or liabilities.

Following the submission of the Superintendent's report, pursuant to *N.J.S.A.* 18A:13–54, Egg Harbor petitioned the Commissioner of the Department of Education for permission to submit the issue of withdrawal to the voters. Although that statute allows the petitioner to request a reduction or increase in the amount of "Indebtedness to be assumed," the petition did not do so.

The Commissioner submitted Egg Harbor's petition to the Board of Review, which is comprised of the Commissioner, the State Treasurer or his designee and the Director of the Division of Local Government Services. On September 2, 1977 the Board of Review conducted a hearing on the petition, granted Egg Harbor's petition and authorized the Superintendent to fix a date for a special election on Egg Harbor's proposed withdrawal. See *N.J.S.A.* 18A:13–56.

The Board of Review's decision included the following finding:

... [Egg Harbor] does not seek to acquire any building, furnishings, or equipment assets if it is permitted to withdraw; therefore, it assumes that it will not incur any liabilities and that all remaining assets and liabilities will be assessed proportionally to the remaining District.

The Board of Review specified that the question submitted to the voters

shall contain a statement that, subsequent to withdrawal, the Township Board [Egg Harbor] shall not assume any further debts or liabilities of the Regional District; neither shall it acquire any of the assets of the Regional District, and that all remaining assets, debts and liabilities shall be shared proportionately among the remaining constituents in the Regional District.

The percentage of debt assumption will increase for the remaining constituents, but not so much so as to be declared excessive or unreasonable.

The decision referred to the Superintendent's duty, pursuant to *N.J.S.A.* 18A:13–62, to divide assets between the withdrawing district and Regional District after the election if the voters approved the withdrawal. The Board of Review then adopted verbatim the Superintendent's four-part recommendation for such a division that is quoted above.

The decision concluded:

The costs for the conduct of the election are clearly prescribed by statute as are the division of assets and liabilities and the seniority entitlement for teaching staff members of the withdrawing and remaining districts. All special elections " * * * shall be called in the manner provided for the calling of the annual school election. * * * " *N.J.S.A.* 18A:14–3.2. Tenure of office and rights pertinent thereto are subjects of legislative determination specifically regarding withdrawals by a constituent district from a regional district. *N.J. S.A.* 18A:13–64. The County Superintendent is authorized to divide assets and liabilities. *N.J.S.A.* 18:13–62.

The following question was submitted thereafter to the voters:

## PROPOSAL

Shall the Egg Harbor Township School District withdraw from The Greater Egg Harbor Regional High School District, in the County of Atlantic, in accordance with the provisions of *N.J.S.* 18A:13–51, *et seq., with no debt to be assumed nor any assets acquired by the withdrawing district,* and the remaining debt of $1,844,000.00 be assumed by *and all assets acquired by The Greater Egg Harbor Regional High School District,* with said debt to be proportionately shared by the remaining constituent districts of The Greater Egg Harbor Regional School District. [Emphasis supplied]

On June 27, 1979 the voters approved the withdrawal. The Commissioner, pursuant to *N.J.S.A.* 18A:13–59, fixed the date of withdrawal as June 30, 1979.

On August 6, 1979 Egg Harbor requested the Superintendent to set up a meeting for the purpose of distributing the Regional District's assets and liabilities pursuant to *N.J.S.A.* 18A:13–62. The Superintendent refused by letter dated August 9, 1979. He stated it was not necessary for him to submit a report or to divide assets. He based his refusal and claim on his conclusion "that *all* assets and *all* liabilities remain with the Regional District and Egg Harbor . . . *acquires no assets* and assumes no debt—this is indeed what the voters approved." [emphasis in original]

On March 6, 1980 Egg Harbor petitioned the Commissioner to compel the Regional District to pay Egg Harbor a distributive share of the Regional District's surplus budget for the 1978–1979 school year. Specifically, Egg Harbor sought its proportionate share, as calculated pursuant to *N.J.S.A.* 18A:8–24, of: $7,715.57

(the excess balance of monies appropriated for that year's capital outlay); $55,804.14 (excess balance of monies appropriated for that year's operating expenses); $14,518.16 (excess balance of monies appropriated for that year's debt service); $831,532 (monies paid by the State of New Jersey to the Regional District pursuant to *N.J.S.A.* 18A:58–7 representing 90% of the Regional District's transportation costs). Egg Harbor also sought to compel the State Department of Education to pay it its rightful share of unpaid funds. In addition, Egg Harbor sought a share of $43,788, the excess and carryover Title I funds provided by the Federal Government. In this instance Egg Harbor sought a percentage based on the number of Title I students from Egg Harbor who attended the Regional District High School.

On July 2, 1980 the Commissioner referred Egg Harbor's petition to an administrative law judge as a contested case. *N.J.S.A.* 52:14F–1 *et seq.*

The judge held a prehearing conference on July 2, 1980, and hearings were held on October 15 and 16, 1980. The State Department of Education (Department) moved to dismiss Egg Harbor's claim against it on the basis of its failure to state a claim on which relief might be granted, and it was dismissed with prejudice. The Regional District's motion to dismiss was denied, as was Egg Harbor's motion for summary judgment. The judge's written decision on these motions was issued on October 23, 1980. On November 1, 1980 the Department made its final transportation reimbursement payment for the 1978–1979 school year to the Regional District. On December 30, 1980 the Commissioner affirmed the administrative law judge's decision dismissing Egg Harbor's claim against the Department and ordered that claim dismissed.

On March 19, 1981 the judge closed the record on Egg Harbor's claim against the Regional District, and on April 27, 1980 rendered his initial decision.

He found that Egg Harbor waived any claim to the assets of the Regional District by acquiescing to the Board of Review's approval of the election which was given on the condition that

Egg Harbor neither assume any further debts or liabilities nor acquire any assets. He further concluded that the *quasi*-judicial function of the Board of Review rendered Egg Harbor's claim *res judicata,* and concluded that Egg Harbor's petition should be dismissed.

Egg Harbor filed exceptions to this initial decision on May 11, 1981. The Commissioner affirmed the finding and determination of the Administrative Law judge on June 19, 1981. Egg Harbor appealed to the State Board of Education on July 13. The State Board affirmed the Commissioner and the administrative law judge, but modified their decisions to indicate that the Superintendent should have filed a report on the Regional . District's assets and liabilities even though Egg Harbor was not entitled to a share of those assets.

Egg Harbor argues that the language of *N.J.S.A.* 18A:13–62 mandated distribution of all assets other than school buildings, grounds, furnishings and equipment, and provides the sole means for distribution for those assets. It provides:

The county superintendent in a written report filed by him at the end of the school year preceding that in which the withdrawal becomes effective shall make a division of the assets and liabilities between the withdrawing district and the regional district in the same manner as provided in *N.J.S.* 18A:8–24.

*N.J.S.A.* 18A:8–24 provides for a division of the "assets, except school buildings, grounds, furnishings and equipment . . . on the basis of the amount of the ratables in the respective districts . . . ."

Here both the Superintendent and the Board of Review considered that the debt service for the remaining districts would increase if Egg Harbor withdrew. In that context, both determined that Egg Harbor should not acquire assets of the Regional District at the time of final distribution of those assets.

Egg Harbor with full knowledge, or at least with sufficient notice, remained inactive; it failed to protest, and freely acted as if it recognized the terms of the Board's approval of its withdrawal. The Regional District, the voters and the remaining constituent districts were induced to suppose that Egg Harbor agreed to relinquish its assets. As the Commissioner

and Department found, this amounts to acquiescence. *Taner v. Atlantic Cas. Ins. Co. of Newark,* 37 *N.J.Super.* 9, 12 (App.Div. 1955). Egg Harbor is now estopped from requesting a distribution of assets because by its acquiescence, it allowed the voters to approve a plan under which it was required to relinquish a claim to any assets of the Regional District.

The language of the question submitted to the voters was clear. Egg Harbor should have raised its objection to any ambiguity prior to that election. *Two Guys from Harrison, Inc. v. Furman,* 32 *N.J.* 199, 205 (1960).

The resolution of the issue on Egg Harbor's acquiescence in the relinquishment of its right to assets obviates the need for deciding whether the issue of the distribution of the assets is *res judicata.* In addition, the decision of the State Board of Education did not rest on *res judicata* and we find it unnecessary to reach that issue.

The State Department of Education has paid the Regional District all monies owing for the 1978–79 school year. Egg Harbor's claim for a share of unpaid funds is moot. *Humble Oil and Refining Co. v. Wojtycha,* 48 *N.J.* 562 (1967).

Affirmed.